UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

AGUSTIN MEJIA,

                         Debtor.
----------------------------------------------------------------x

KENNETH ROSELLINI,

                           **OPINION & ORDER**

             Appellant,

      – against –                         No. 25-CV-3402 (CS)

THOMAS C. FROST,

             Appellee.

----------------------------------------------------------------x

Appearances:

Kenneth Rosellini
Clifton, New Jersey
*Pro se Appellant*

Thomas C. Frost
White Plains, New York
*Standing Chapter 13 Trustee, Appellee*

Seibel, J.

Before the Court is the appeal of Kenneth Rosellini ("Appellant") from a February 19, 2025 Memorandum Decision, (ECF No. 10 ("Appx.") at 7-25 (the "Contempt Decision")), and a corresponding March 4, 2025 Order, (Appx. at 5-6 (the "Sanctions Order")), both entered by Judge Cecelia G. Morris of the United States Bankruptcy Court for the Southern District of New York, in the Chapter 13 bankruptcy proceeding captioned *In re Mejia*, 24-BK-22488 (Bankr. S.D.N.Y.). The Contempt Decision granted the motion of Chapter 13 Trustee Thomas C. Frost

("Trustee") seeking to hold Appellant in contempt of court, and the Sanctions Order directed Appellant to "take all necessary actions as required by" the Contempt Decision and "comply with all terms and conditions as outlined therein." (Appx. at 6.) The sanctions imposed by both Orders included disgorgement of any fees Appellant received in connection with the bankruptcy case, a monetary sanction of $2,000 payable to the Legal Aid Society of Rockland County, and referral to the Southern District of New York Grievance Committee ("Grievance Committee"). (*Id.* at 22-24.) The Contempt Decision also barred Appellant from filing any further petitions in the United States Bankruptcy Court for the Southern District of New York unless and until the Grievance Committee issued a ruling. (*Id.* at 24.) Appellant also appeals Judge Morris's subsequent April 4, 2025 Order denying his motion for reconsideration of the Contempt Decision. (*Id.* at 26-28 (the "Order Denying Reconsideration")).

For the following reasons, the Bankruptcy Court's Orders are affirmed.

## I.    **BACKGROUND**

On June 3, 2024, Appellant filed a voluntary Chapter 13 bankruptcy petition on behalf of debtor Agustin Mejia. (Bankr. Dkt. No. 1.)[1] The petition failed to include the documentation required under the bankruptcy rules and 11 U.S.C. § 521. (*See* Bankr. Dkt. No. 3 ("Deficiency Notice").)[2] On June 4, 2024, the Bankruptcy Court issued a Deficiency Notice detailing the

---

[1] Citations to "Bankr. Dkt. No." refer to entries on the Bankruptcy Court's docket, No. 24-BK-22488. Citations to "ECF No." refer to entries on this Court's docket for this case, No. 25-CV-3402.

[2] The missing documentation included the following forms: Attorney Disclosure Statement; Statement of Your Current Monthly Income and Calculation of Commitment Period (Official Form 122C−1); Chapter 13 Model Plan; the Declaration About an Individual Debtor's Schedules (Official Form 106Dec); Calculation of Your Disposable Income (Official Form 122C−2); Schedule A/B: Property (Official Form 106A/B); Schedule C: The Property You Claim as Exempt (Official Form 106C); Schedule D: Creditors Who Hold Claims Secured By Property (Official Form 106D); Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F); Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G);

missing documentation and providing that this documentation was due by June 17, 2024. (*Id.*) That same day the Court also issued: (1) a Notice of Hearing, which warned the debtor that the case was subject to the automatic dismissal provisions set forth in 11 U.S.C. § 521(i) and set a conference for July 31, 2024 to consider dismissal of the case if the deficiencies were not cured, (Bankr. Dkt. No. 4); and (2) a Notice stating, among other things, that the meeting of creditors would be held on June 27, 2024 at 10:30 a.m. and that Debtor was obligated to attend, (Bankr. Dkt. No. 5).

The meeting of creditors is required by 11 U.S.C. § 341(a), but Appellant and the debtor both failed to appear. (*See* Appx. at 8.)[3] The Bankruptcy Court thus adjourned the meeting to August 7, 2024. (*See* Bankr. Dkt. No. 9.) Appellant and the debtor again failed to appear. (*See* Appx. at 9; Bankr. Dkt. No. 12.)

On July 18, 2024, Appellant filed a motion seeking to extend to August 1, 2024 the deadline for filing the required documentation. (Bankr. Dkt. No. 10 (the "Extension Motion").)[4] The automatic dismissal hearing had been set for July 31, 2024, but the Bankruptcy Court adjourned it to August 28, 2024 so that the Extension Motion could be heard on the same date.

---

Schedule H: Your Codebtors (Official Form 106H); Schedule I: Your Income (Official Form 106I); Schedule J: Your Expenses (Official Form 106J); Statement of Financial Affairs; and Summary of Assets and Liabilities. (*See* Deficiency Notice at 3.)

[3] The Contempt Decision states that the meeting was held on July 27, 2024, but it appears from the docket that this was in error and the meeting was held in June. (*See* Bankr. Dkt. Nos. 5, 9.)

[4] Although the motion requested an extension of the deadline "from July 18, 2024 to August 1, 2024," (Extension Motion), the deadline – as prescribed by the bankruptcy rules, *see* Fed. R. Bankr. P. 1007(c) (providing that schedules and statements must be filed within fourteen days of filing of petition), 3015(b) (providing that Chapter 13 plan must be filed within fourteen days of filing of petition), and as stated by the Deficiency Notice – was June 17, 2024. Indeed, the affirmation attached to the motion stated that Appellant was moving "pursuant to Bankruptcy Rule 1007(c)," (Bankr. Dkt. No. 10-1), which sets forth the fourteen-day deadline, *see* Fed. R. Bankr. P. 1007(c).

(Bankr. Dkt. No. 11; *see* Appx. at 9.)  On August 26, 2024, however, Appellant – who still had not filed any of the missing documentation – filed motions seeking to voluntarily dismiss the case and withdraw the Extension Motion.  (Bankr. Dkt. Nos. 13, 14.)  He then failed to appear at the August 28 hearing.  (*See* Appx. at 9.)

At that hearing, the Trustee informed Judge Morris that Appellant's conduct in the debtor's case mirrored his conduct in prior cases filed with the Bankruptcy Court.  (*See id.*)  Specifically, Appellant had a history of failing to appear for court hearings and § 341(a) meetings, failing to file required documents, and disregarding court orders.  (*Id.*)  The Trustee thus informed the Bankruptcy Court of his intention to file a motion for an order to show cause, and the Bankruptcy Court retained jurisdiction over Appellant for purposes of that motion after granting dismissal of the debtor's case.  (*See id.* at 9-10; Bankr. Dkt. No. 15.)  The Trustee filed the Motion for an Order to Show Cause on September 18, 2024, (Appx. at 37-95), citing Appellant's "failure to adequately represent his client" and his "continuing pattern of abuse of the Bankruptcy Code," (*id.* at 43).

The motion described Appellant's failures to "adequately represent his client or uphold his duties as an attorney before this [c]ourt," including by "filing bare-bones Chapter 13 cases, not filing required documents, and failing to appear before both the Chapter 13 Trustee and/or the Court," (*id.* at 41), and noted that Appellant had "engaged in a similar pattern of conduct" in prior cases, (*id.* at 42 (first citing *In re Sanchez*, No. 22-22214 (Bankr. S.D.N.Y. 2022); then citing *In re Scanlan*, No. 19-23120 (Bankr. S.D.N.Y. 2019); and then citing *In re Williams*, No. 19-36202 (Bankr. S.D.N.Y. 2019))).  The motion also attached an affirmation that the Trustee had filed in a prior case detailing Appellant's conduct, which noted that Appellant had been sanctioned by at least four bankruptcy and district courts, and that two of these sanctions orders

4

had been affirmed by the Courts of Appeal for the Second and Third Circuits. (*Id.* at 42, 45-54.) The Trustee also referred the court to a prior order issued by the Bankruptcy Court on October 7, 2022 in the case *In re Redzeposki*, which required Appellant to "appear within 14 days the next time he files a petition without the proper documentation" and warned him that he would be "reported to the grievance committee next time he fails to provide proper documentation timely." (*Id.* at 41 (citing Order Directing Attorney's Fees Disgorged, *In re Redzeposki*, No. 22-22327 (Bankr. S.D.N.Y. Oct. 7, 2022), Dkt. No. 30 ("*Redzeposki* Order")).)

Appellant opposed the motion, (Appx. 101-127), and the Bankruptcy Court held a hearing on October 9, 2024, at which Appellant and the Trustee appeared, (*id.* at 187-212). The Bankruptcy Court granted the Trustee's motion in a written decision on February 19, 2025, (Contempt Decision), and issued the order imposing sanctions on March 4, 2025, (Sanctions Order). After recounting the pattern of conduct described by the Trustee's motion, the Contempt Decision noted that "filing skeletal petitions on behalf of clients, doing nothing else, being sanctioned as a result, and having his cases dismissed" appears to be Appellant's "modus operandi," and that prior sanctions requiring him to disgorge attorneys' fees had been insufficient to deter Appellant from continuing this conduct. (Appx. at 10-14.) The Bankruptcy Court then held that Appellant's conduct in the instant case was in "blatant disregard" of the *Redzeposki* Order's unambiguous directive that Appellant appear within fourteen days of filing a petition lacking the proper documentation, as he had filed a "bare-bones" petition without the proper documentation and had not appeared until 128 days later despite being notified of the petition's deficiencies. (*Id.* at 15-18, 24.) The Contempt Decision then held that the following sanctions were appropriate: (1) requiring Appellant to disgorge any fees he had received in connection with the case; (2) requiring him to pay $2,000 to the Legal Aid Society of Rockland County; and

(3) referring him to the Grievance Committee and barring him from filing any further petitions in the Bankruptcy Court unless and until the Grievance Committee issued a ruling. (*Id.* at 22-24.) The Bankruptcy Court then issued the Sanctions Order imposing these sanctions as set forth in the Contempt Decision. (*See generally* Sanctions Order.)

Appellant filed a motion for reconsideration of the Contempt Decision and Sanctions Order on March 18, 2025, (Appx. at 142-164), which the Bankruptcy Court denied, (Order Denying Reconsideration). Appellant filed his appeal in this Court on April 24, 2025. (ECF No. 1.) On May 22, 2025, Appellant filed a Designation of Bankruptcy Record on Appeal and Statement of the Issues on Appeal. (ECF No. 3.) On August 1, 2025, the Bankruptcy Clerk filed the Notice of Record. (ECF No. 4.) Appellant filed his brief on September 2, 2025. (ECF No. 5.)

On September 17, the Trustee filed a letter requesting a conference to discuss his anticipated motion to dismiss on the ground that Appellant had failed to file an appendix as required by Federal Rule of Bankruptcy Procedure 8018(b)(1). (ECF No. 6.) The Court held a conference on October 23, 2025, during which it extended Appellant's time to submit the appendix to November 24, 2025; ordered him to refile his brief with appendix cites by December 1, 2025; and set a briefing schedule for Trustee's motion to dismiss, which he indicated he still intended to file on substantive grounds even assuming Appellant filed a proper record on appeal. (*See* Minute Entry dated Oct. 23, 2025.) Appellant filed the record on appeal on November 24, 2025, (Appx.), and filed his amended brief on December 1, 2025, (ECF No. 11 ("Appellant's Brief")). The Trustee filed a brief in response on January 8, 2026, (ECF No. 12 ("Trustee's Brief")), to which Appellant replied on January 23, 2026, (ECF No. 13 ("Appellant's Reply")).

II.    **STANDARD OF REVIEW**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017) (summary order).[5]

"A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error."  *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021).  "On appellate review, this Court may set aside a bankruptcy court's order holding a party in contempt only for abuse of discretion, but such review is more exacting than under the ordinary abuse-of-discretion standard because a bankruptcy court's contempt power is narrowly circumscribed."  *In re Blair Ventures, LLC*, 581 B.R. 728, 732 (S.D.N.Y. 2017).  A bankruptcy court's award of sanctions is also subject to the abuse of discretion standard.  *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). "This means that the Court does not consider whether it would have made the same decision, but merely whether the Bankruptcy Court's decision was reasonable."  *Schneorson v. Schneorson*, No. 22-CV-2434, 2023 WL 4490392, at *4 (E.D.N.Y. July 12, 2023).  A bankruptcy court's decision amounts to an abuse of discretion where it "(1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding."  *Miles v. Chase Bank*, No. 20-CV-4748, 2022

---

[5] Unless otherwise noted, case quotations omit internal quotation marks, citations, alterations and footnotes.

WL 842073, at *1 (E.D.N.Y. Jan. 24, 2022).  "In reviewing the bankruptcy court's determinations, this Court may rely upon any ground supported by the record – it need not rely solely upon those relied upon by the Bankruptcy Court."  *Amelio v. Piazza*, No. 19-CV-5944, 2020 WL 5535241, at *3 (S.D.N.Y. Sept. 15, 2020).[6]

### III.   DISCUSSION

#### A.     The Bankruptcy Court Had Jurisdiction to Issue the Orders

Appellant first argues that the Bankruptcy Court lacked jurisdiction to issue the challenged orders.  (Appellant's Brief at 18-22.)  While his argument on this point is unclear, he appears to contend that the orders are not consistent with Article III of the Constitution and that the Bankruptcy Court failed to adequately explain the grounds for its jurisdiction, including why the contempt proceedings were a "core proceeding" under 28 U.S.C. § 157(b)(2).  (*See id.*)

The Contempt Decision, however, clearly set forth the Bankruptcy Court's grounds for its jurisdiction, as well as its authority and discretion to impose sanctions.  (Appx. at 7-8, 20-22; *see id.* at 28.)  *See also* 28 U.S.C. § 1334(a) (granting district courts original and exclusive jurisdiction over title 11 proceedings); *id.* § 157(a) (permitting district courts to refer title 11 proceedings to bankruptcy courts); *id.* § 157(b) (permitting bankruptcy judges to hear and determine all "core proceedings" arising under title 11); Standing Order of Reference of Chief Judge Loretta A. Preska, 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012)  ("Standing Order") (referring all title 11 proceedings to bankruptcy judges pursuant to 28 U.S.C. § 157(a)); *In re Petrie Retail, Inc.*, 304 F.3d 223, 228, 230 (2d Cir. 2002) (bankruptcy courts have "comprehensive power and

---

[6] Plaintiff is an attorney representing himself, which means "he is not entitled to the special solicitude and latitude courts traditionally afford to *pro se* litigants."  *Anthes v. Nelson*, 763 F. App'x 57, 60 n.2 (2d Cir. 2019) (summary order); *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such [special] solicitude at all.").

may enter appropriate orders and judgments" in "core proceedings," and "[a] bankruptcy court retains post-confirmation jurisdiction to . . . enforce its own orders").

Appellant's arguments to the contrary are meritless.  Appellant contends that neither 28 U.S.C. § 1334(a) nor 28 U.S.C. § 157(a) grants the Bankruptcy Court jurisdiction because § 1334(a) grants *district* courts exclusive jurisdiction, while § 157(a) "merely states" that the district court *may* provide that title 11 cases should be referred to bankruptcy judges.  (*See* Appellant's Brief at 21.)  But Chief Judge Preska's January 31, 2012 Standing Order clearly refers all title 11 proceedings within the Southern District of New York to the Bankruptcy Court. *See* Standing Order ("Pursuant to 28 U.S.C. Section 157(a) any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district.").[7]

And while Appellant quotes the examples of "core proceedings" listed in 28 U.S.C. § 157(b)(2), presumably to demonstrate that contempt proceedings are not listed, (*see* Appellant's Brief at 19-20), the statute explicitly provides that core proceedings "are not limited to" the provided examples, 28 U.S.C. § 157(b)(2).  Indeed, the Second Circuit has held that "'core proceedings' should be given a broad interpretation," and that "[p]roceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by

---

[7] Appellant attempts to avoid this obvious conclusion by quoting a section of the Standing Order discussing how the court should proceed when "'entry of a final order or judgment by a bankruptcy judge would not be consistent with Article III of the United States Constitution in a particular proceeding referred under this order.'"  (*See* Appellant's Brief at 18 (quoting Standing Order).)  He argues that the Bankruptcy Court's citation to the Standing Order, which includes this provision, "indicates that the Bankruptcy Court has determined that the subject order, 'would not be consistent with Article III of the United States Constitution.'"  (*Id.*) But it is clear that the Bankruptcy Judge cited the Standing Order for its referral of title 11 proceedings to bankruptcy courts, not for the irrelevant exception cited by Appellant.  The Court is unpersuaded by Appellant's transparent effort to manipulate this citation into a concession that the Bankruptcy Court lacked authority.

the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999); *see In re Navigator Gas Transp. PLC*, 358 B.R. 80, 86 (Bankr. S.D.N.Y. 2006).  Thus, "a bankruptcy judge has the authority to issue an order of contempt to coerce compliance with an earlier order in a core proceeding because the finding of contempt is part and parcel of the core proceeding itself."  *In re L.H. & A. Realty, Inc.*, 62 B.R. 910, 912 (Bankr. D. Vt. 1986); *see Bartel v. E. Airlines*, No. 96-5105, 1998 WL 2405, at *2 (2d Cir. Jan. 6, 1998) (summary order) ("The contempt sanctions related to a core bankruptcy issue, and thus were themselves core issues.").

Moreover, in affirming the imposition of sanctions on Appellant for his improper conduct in a different case, the Second Circuit expressly held that "bankruptcy courts, like Article III courts, possess inherent sanctioning powers," including "the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances."  *In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019) (*per curiam*).  Thus, even if Appellant had offered a coherent argument on this point, which he has not, such an argument would fail.

### B.    Appellant Was Properly Held in Contempt

Appellant next argues that the Bankruptcy Court did not have the grounds to find him in contempt.  To demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  In the bankruptcy context, civil contempt is appropriate only where "there is *no fair ground of doubt* as to whether the order barred the [contemnor]'s conduct."  *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019)

(emphasis in original); *see In re Markus*, 78 F.4th 554, 566 (2d Cir. 2023). "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the [party's] conduct might be lawful." *Taggart*, 587 U.S. at 557. "The standard is an objective one: [a] party's subjective belief that [it] was complying with an order ordinarily will not insulate [it] from civil contempt if that belief was objectively unreasonable." *In re Johns-Manville Corp.*, 666 B.R. 476, 484 (Bankr. S.D.N.Y. 2025).

### 1.    The *Redzeposki* Order Was Clear and Unambiguous

Appellant attempts to argue that the *Redzeposki* Order is ambiguous because it "does not provide the mechanism by which Counsel must appear within fourteen days" and "does not specify what 'a petition without proper documentation' is." (Appellant's Brief at 30.)

"An order is clear and unambiguous where it is specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." *Nunez v. N.Y.C. Dep't of Corr.*, 758 F. Supp. 3d 190, 218 (S.D.N.Y. 2024); *see Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021). The *Redzeposki* Order meets this standard.

First, while Appellant argues that the "mechanism" for compliance was unclear, (Appellant's Brief at 30), he does not, and cannot, argue that the *Redzeposki* Order was unclear in requiring his appearance. In other words, Appellant's argument that the order did not spell out exactly *how* he was to appear does not suggest that the order did not clearly apprise him "of the conduct . . . required." *Nunez*, 758 F. Supp. 3d at 218; *cf. CBS Broad. Inc. v. FilmOn.com, Inc.*, No. 10-CV-7532, 2014 WL 3702568, at *4 (S.D.N.Y. July 24, 2014) (rejecting argument that order was ambiguous where it prohibited infringement but did not "list every potential transmission mechanism that it bar[red]"), *aff'd*, 814 F.3d 91 (2d Cir. 2016); *Leadsinger, Inc. v. Cole*, No. 05-CV-5606, 2006 WL 2266312, at *13 (S.D.N.Y. Aug. 4, 2006) (even assuming that

11

certain provisions in order were vague, contempt sanctions still warranted where order unambiguously proscribed contemnor's violative conduct).  Appellant could have filed a letter with the Bankruptcy Court requesting a conference date for the appearance or otherwise asked for guidance as to the logistics of his appearance.  *Cf. In re Kwok*, No. 24-1271, 2025 WL 783645, at *2 (2d Cir. Mar. 12, 2025) (summary order) (noting that "appellants had months to seek clarification and elected not to do so" in rejecting argument that order was ambiguous).[8] Nor is there is any reading of the *Redzeposki* Order which could have permitted Appellant to reasonably believe he was compliant.  It plainly required action within the first fourteen days after filing (that is, by June 17, 2024), and Appellant did literally nothing in the case between June 3, 2024, when he filed the petition, and July 18, 2024, when he made the Extension Motion. Even if Appellant was unsure of the best way to comply with the *Redzeposki* Order – which the Court doubts – this would not excuse his failure to make *any* attempt to comply with the order's unambiguous directive.

Appellant's suggestion that he had no way of knowing what Judge Morris meant in the *Redzeposki* Order when she directed him "to appear within 14 days the next time he files a petition without the proper documentation" also overlooks that that order, entitled "Order Directing Attorney's Fees Disgorged," simply memorialized orders she had made on the record at a hearing on an Order to Show Cause held on October 6, 2022, which Appellant attended. (*See Redzeposki* Order.)  At that hearing, as explained in the *Redzeposki* Order, Judge Morris ordered Appellant to disgorge $1700 in attorney's fees charged for the case; "directed him to

---

[8] Indeed, the *Redzeposki* Order could not have included the required date of appearance or similar details given that the requirement to appear was conditioned on Appellant's future conduct – namely, his filing a petition without the proper documentation.

appear within 14 days the next time he files a petition without the proper documentation"; and warned him "that he will be reported to the grievance committee next time he fails to provide proper documentation timely." (*Id.*)  Although Appellant has not provided the Court with the transcript of that hearing, he has never suggested that Judge Morris left it unclear as to what the oral order required.[9]  To the contrary, he claimed below and claims here that he forgot about the ruling. (*See* Appellant's Brief at 4; Appx. at 101-102 ¶ 6.)[10]  Further, it is obvious that the requirement to "appear" must refer to an in-person appearance, given that the filing of a petition automatically enters counsel's appearance on the docket and given the Bankruptcy Judge's obvious desire that counsel face her promptly if he filed again without the required documentation.  It would have been a simple matter for Appellant, following the filing in this case, to have alerted the Court to his obligation to appear and requested a date and time.

Second, Appellant's feigned ignorance as to what constituted the "proper documentation," (Appellant's Brief at 30), is equally unconvincing.  Not only is the required documentation specified by statute, *see* 11 U.S.C. § 521, but the Bankruptcy Court's June 4, 2024 Deficiency Notice specifically detailed the precise documents that the petition here lacked, (*see* Deficiency Notice).

Finally, Appellant makes a disingenuous attempt to frame the Contempt Decision as admitting that the *Redzeposki* Order was ambiguous.  Appellant quotes the following language from the Contempt Decision:  "The Opposition prays the Court will find it convincing that Mr. Rosellini 'did not recall when filing this case that there was a provision or reference at a hearing

---

[9] Nor has he suggested, in the unlikely event he did not understand his obligations, that he lacked the opportunity at that hearing to ask.

[10] If such orders are so commonplace in Appellant's practice that they slipped his mind, that is a different problem.

in th[e] [*Redzeposki*] case which might apply to any future case.'  It does not."  (Appellant's Brief at 31.)  Appellant then argues that "[i]f there is no provision that the Order might apply to any future case, and the Court acknowledges that 'It does not', how can that not be considered to be ambiguous?"  (*Id.*)  But as a matter of both grammar and logic, it is clear that the Bankruptcy Court was explaining that it did not find Appellant's argument convincing, not that the *Redzeposki* Order did not contain a provision which might apply to future cases.  Indeed, the *Redzeposki* Order requires Appellant's appearance within fourteen days "the next time he files a petition without the proper documentation," and thus expressly encompasses the filing of new petitions.  (*Redzeposki* Order.)  Appellant's strained attempts to find flaws in the *Redzeposki* Order are without merit.

> ### 2.    Appellant Clearly Made No Attempt to Comply with the *Redzeposki* Order

Appellant also argues that he was not delinquent in his filings because "[t]he applicable rule for filing for an extension of time to file schedules is within 45 days of the filing of the petition is 11 U.S.C. §521(i)(3) [*sic*]."  (Appellant's Brief at 22.)  That statutory provision permits a bankruptcy court to extend the period for filing required documentation "upon request of the debtor made within 45 days after the date of the filing of the petition" if the court finds justification for such an extension.  *See* 11 U.S.C. § 521(i)(3).  This allows bankruptcy courts to exempt certain debtors from the automatic dismissal provision in 11 U.S.C. § 521(i)(1), which provides that if a debtor fails to file all of the required documentation "within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition."  *Id.* § 521(i)(1).  But contrary to Appellant's contention, this provision does not mean that the deadline for filing the required documentation is 45 days after the filing of the petition; it merely allows bankruptcy courts to decline to

14

automatically dismiss deficient petitions upon a showing of just cause within that 45-day period. The fact that Appellant requested an extension before the case was automatically dismissed based on his failure to timely file the required documentation does not mean that he was not untimely in the first place. Indeed, both the bankruptcy rules and the Deficiency Notice expressly provide that the required documentation is to be filed within fourteen days of the filing of the petition, Fed. R. Bankr. P. 1007(c), 3015(b); (*see* Deficiency Notice), and the Deficiency Notice expressly warned Appellant that "the failure to file any required document by [the deadline set forth in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure] may be cause for the dismissal or conversion of your case *prior to* the forty-sixth (46th) day following the commencement of the case," (Deficiency Notice (emphasis in original)).

Appellant insists that the statute does not specify that the required documentation must be filed within the time period prescribed by the bankruptcy rules, and that his extension requests in prior cases have been granted when filed after the expiration of the fourteen-day period but within forty-five days of filing. (Appellant's Brief at 22-23.) First, as discussed above, the fact that 11 U.S.C. § 521(i)(3) does not specifically refer to the fourteen-day deadline does not mean that this deadline does not exist, but merely that bankruptcy courts have the discretion to excuse untimely filings if an extension is requested within forty-five days and provides proper justification for the delay. And second, the fact that Appellant's failure to timely file had been excused in prior cases did not require the Bankruptcy Court here to be equally permissive, particularly in light of the *Redzeposki* Order's express warning against future delinquencies and Appellant's failure to provide any just cause for his delinquency. (*See* Bankr. Dkt. No. 10-1 (merely stating, in circular fashion, that "more time is needed to complete the necessary filings

15

properly" because of "the amount of time required to complete and file schedules" and "Debtor's counsel's schedule").)

Appellant next argues that the Contempt Decision is invalid because it sanctions him for filing a "good faith" petition. (Appellant's Brief at 23-25.) In so arguing, he insists that the bankruptcy rules permit a debtor to voluntarily dismiss a case, seemingly contending that the Bankruptcy Court presumed from the voluntary dismissal here that the filing was improper at the outset. (*Id.*) The Court notes that Appellant's history of filing substantially deficient petitions and either having cases dismissed or voluntarily dismissing them raises doubts as to whether the petition was indeed filed in good faith. *See In re Campora*, No. 14-CV-5066, 2015 WL 5178823, at *11 (E.D.N.Y. Sept. 3, 2015) (failure "to comply with the most minimal responsibilities of a person legitimately seeking bankruptcy protection" suggests that "bankruptcy case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets" and thus "should be dismissed as having been filed in bad faith"). But regardless, the Bankruptcy Court did not take issue with Appellant's initial filing of the bankruptcy case, but rather with his repeated failures to comply with his obligations once the cases had been filed, including the failure to file the required documentation and appear for court hearings. Whether or not Appellant filed the case in good faith – which again, is questionable – it is clear from the record that he failed to do what was required of him thereafter, and he has provided no argument plausibly excusing this failure.

Similarly, Appellant argues at length that the Contempt Decision mischaracterizes his conduct in prior cases, and he describes the various ways in which his representation in those cases was successful. (Appellant's Brief at 10-12, 26-29; *see also* Appellant's Reply at 1.) As a threshold matter, Appellant's conduct in the prior cases is not the subject of the instant appeal,

16

and it is not the Court's role to question the propriety of any sanctions issued in those cases –

particularly given that the sanctions in certain of those case were affirmed by other district and

appellate courts. *See In re Sanchez*, 790 F. App'x 293 (2d Cir. 2019) (summary order); *In re

Mondelli,* 508 F. App'x 131 (3d Cir. 2012). Moreover, regardless of the overall effectiveness of

Appellant's representation in these cases, for the most part he does not appear to dispute that he

engaged in the conduct for which he was sanctioned, such as failing to file required

documentation. (*See* Appx. at 10 (detailing prior cases in which Appellant was sanctioned for

filing petitions without proper documentation, failing to appear for court hearings and § 341(a)

meetings, and failing to make payments as required by the Bankruptcy Code and bankruptcy

rules).)[11] Whether Appellant's clients did not "complain[] about his representation" or

"accomplished [their] goal[s]" in filing for bankruptcy, (Appellant's Brief at 29), is immaterial to

whether Appellant repeatedly engaged in the improper conduct outlined in the Contempt

Decision. And given the similarities between that prior conduct and Appellant's shortcomings in

the instant case, the Bankruptcy Court was justified in determining that prior sanctions had not

adequately deterred Appellant from failing to comply with his obligations under the bankruptcy

rules. (Appx. at 13-14.)

Moreover, even if Appellant's conduct was not improper in these prior cases, this does

not change the fact that his filing of the deficient petition in this case and his failure to appear

within fourteen days thereafter was in direct violation of the *Redzeposki* Order. Appellant's only

defense to this fact is that he "did not recall when filing this case that there was a provision or

---

[11] While Appellant argues that he should not be faulted for failing to appear at a hearing in *In re Scanlan*, No. 19-23120 (Bankr. S.D.N.Y.), because it involved a motion he did not oppose, he nonetheless acknowledges that the case was "automatically dismissed on July 21, 2019 pursuant to §521(i)(1)," thus conceding that he never filed the required documentation in that case. (Appellant's Brief at 26-28.)

reference at a hearing in that case which might apply to any future case Counsel would appear for a Debtor in this Court." (Appellant's Brief at 4.) But as noted by the Bankruptcy Court, Appellant, "as a member of the bar and officer of the court, is responsible for strictly adhering to court orders." (Appx. at 18 (citing *Syntel Sterline Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 103 (S.D.N.Y. 2018)).) *See Hart v. Blanchette*, No. 13-CV-6458, 2019 WL 1416632, at \*22 (W.D.N.Y. Mar. 29, 2019) ("It is axiomatic that attorneys must comply with court orders . . . .") (collecting cases), *report and recommendation adopted sub nom. Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2021 WL 2002996 (W.D.N.Y. May 19, 2021); *In re Johns-Manville Corp.*, 666 B.R. at 484 (subjective belief that conduct complied with court order is insufficient where belief is objectively unreasonable). Accordingly, because Appellant clearly violated, and made no attempt to comply with, a clear and unambiguous order, the Bankruptcy Court appropriately held him in contempt.

### C.    **Discussions at the Scheduled Conference Were Not  *"Ex Parte"* Communications**

Appellant also argues that the Bankruptcy Court and the Trustee engaged in "improper *Ex Parte* communication[s] under [Federal Rule of Bankruptcy Procedure] 9003." (Appellant's Brief at 25-26.) He seemingly contends that at the August 28, 2024 conference, the Trustee raised with the Court issues unrelated to the Extension Motion, for which he claims the conference was scheduled. (*Id.*)

First, the August 28 conference was set to discuss not only the Extension Motion but also the possibility of automatic dismissal. (Bankr. Dkt. Nos. 10-11.) And by then Appellant had moved to withdraw the Extension Motion and voluntarily dismiss, (Bankr. Dkt. Nos. 13-14), and the Bankruptcy Judge granted the dismissal that day, (Bankr. Dkt. No. 15). The proceeding was not strictly about the Extension Motion. In any event, while Appellant attempts to frame the

18

Trustee's Motion for an Order to Show Cause as an "unrelated oral motion[] made during the hearing" that he had no opportunity to contest, (Appellant's Brief at 26), the Trustee at the hearing merely informed Judge Morris of his intention to seek the Order to Show Cause, (*see* Appx. at 9-10), and it is undisputed that he filed a formal motion on the docket after the hearing, (*id.* at 37-95), to which Appellant filed an opposition, (*id.* at 101-127). *Cf. In re Bascus*, No. 15-CV-869, 2016 WL 4438114, at *9 (E.D. Tex. Aug. 23, 2016) (even where law firm was not noticed to appear for dismissal hearing, fact that discussions at hearing "painted the [law firm] in a negative light" that eventually led bankruptcy court to issue order to show cause did not render hearing an *ex parte* show cause hearing in violation of Rule 9003). There were no decisions made as to the motion for sanctions during the hearing, and thus the fact that Appellant was not present could not have prejudiced him. *See Waske v. Lehman Bros. Holdings Inc.*, No. 20-CV-5083, 2021 WL 4523495, at *8 (S.D.N.Y. Sept. 30, 2021), *motion for relief from judgment denied*, 2023 WL 348135 (S.D.N.Y. Jan. 19, 2023). Moreover, it is unclear how Appellant can take issue with the mere fact that discussions took place in his absence when he deliberately chose not to appear in court for a scheduled hearing. *See Stevenson v. Bank of Am., N.A.*, 597 F. App'x 4, 6 (2d Cir. 2015) (summary order) ("[T]he on-the-record hearing, of which Appellants had notice and neglected to attend, does not constitute an improper *ex parte* contact."); *Seck v. Dipna RX Inc.*, No. 16-CV-7262, 2018 WL 10038787, at *4 (S.D.N.Y. Mar. 14, 2018) (rejecting attorney's argument that scheduled court conference that attorney intentionally failed to attend was improper *ex parte* communication). Thus, Appellant's argument on this point does nothing to cast doubt on the validity of the Contempt Decision.

**D.    The Sanctions Imposed Were Appropriate**

Finally, Appellant argues that the Bankruptcy Court lacked authority, absent a finding of bad faith, to issue the sanction barring him from filing further petitions until the Grievance Committee issued a ruling.  (Appellant's Brief at 31-34.)

As Appellant concedes, (*see id.* at 32), "a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders," *In re Markus*, 78 F.4th at 570.  These inherent powers also "include the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances." *In re Sanchez*, 941 F.3d at 628; *see In re Markus*, 78 F.4th at 564.  Further, where a bankruptcy court imposes sanctions on an attorney for the "'violation of a court order or other misconduct that is not undertaken for the client's benefit,'" no finding of bad faith is required.  *In re Markus*, 78 F.4th at 566 (quoting *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000)).[12]  "In other words, when an attorney's misconduct falls within h[is] role as an advocate for h[is] client, . . . a finding of bad faith is required to sanction pursuant to inherent authority," but no such finding is necessary when, as here, the misconduct involves the attorney's role "as an officer of the court." *Id.*; *see Handschu v. Police Dep't*, 679 F. Supp. 2d

---

[12] Appellant's Reply cites *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), for the proposition that any imposition of sanctions requires a showing of bad faith and must be compensatory rather than punitive, (*see* Appellant's Reply at 13-14).  But *Goodyear* addressed a sanction requiring a litigant to pay an opposing party's attorney's fees, 581 U.S. at 107-08, and did not speak to courts' power to sanction attorneys appearing before the court, *see In re Markus*, 78 F.4th at 565 (discussing courts' power to impose "punitive – that is, non-compensatory" – sanctions on attorneys).  Nor is the Court swayed by Appellant's citation to *In re Gravel*, 6 F.4th 503 (2d Cir. 2021), in which the court addressed the propriety of a $75,000 sanction imposed pursuant to Federal Rule of Bankruptcy Procedure 3002.1(i) rather than the bankruptcy court's inherent sanctioning powers.

488, 503 (S.D.N.Y. 2010) ("[A] court may sanction attorneys' conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith.").

First, Appellant attempts to argue that he was sanctioned "in [his] role as an advocate for [his] client, to exercise the right to file an emergency bankruptcy petition." (Appellant's Brief at 32.) But as discussed above, Appellant was sanctioned for his failure to comply with his obligations as counsel after filing the bankruptcy petition, which failure violated the *Redzeposki* Order. Misconduct involving the "violation of a court order" implicates Appellant's role as an officer of the court, not as an advocate, *In re Markus*, 78 F.4th at 566; *Seltzer*, 227 F.3d at 41-42, as does the failure to follow federal and local filing rules despite warnings by the court, *Palmer v. Simon's Agency, Inc.*, No. 19-CV-114, 2020 WL 2129264, at *4 (N.D.N.Y. May 5, 2020), *aff'd*, 833 F. App'x 838 (2d Cir. 2020) (summary order).

Next, Appellant contends that the Bankruptcy Court lacked the power to impose a sanction limiting his practice, as the local district rules for attorney discipline "provide specific procedures for prohibiting an attorney from practicing in either the district or bankruptcy courts, which include review by a grievance committee." (Appellant's Brief at 33.) As an initial matter, Appellant's attempt to frame this sanction as usurping the role of the Grievance Committee ignores that the filing bar was only in place "unless and until the Grievance Committee issues a ruling." (Appx. at 24.) And preventing Appellant from filing additional petitions in the meantime was a valid exercise of the Bankruptcy Court's statutory authority to "enforce or implement court orders or rules, or to prevent an abuse of process," 11 U.S.C. § 105(a), as well as its "inherent authority to regulate the conduct of attorneys who appear and practice before it," *In re Star*, No. 09-77947, 2010 WL 3239090, at *6 (Bankr. E.D.N.Y. Aug. 13, 2010). Several courts in this Circuit have confirmed that a bankruptcy court's sanctioning power includes the

authority to bar an attorney from practicing before the court.  *See In re MPM Enters., Inc.*, 231 B.R. 500, 504 (E.D.N.Y. 1999) ("[B]ankruptcy courts possess the inherent power to suspend or disbar attorneys."); *In re Reyes*, 651 B.R. 99, 133 (Bankr. S.D.N.Y. 2023) ("'Bankruptcy courts have both statutory and inherent authority to deny attorneys and others the privilege of practicing before that bar.'") (quoting *In re Johnson*, 921 F.2d 585, 586 (5th Cir. 1991)), *aff'd*, No. 23-CV-4185, 2023 WL 8184933 (S.D.N.Y. Nov. 25, 2023); *In re Gamlen*, No. 18-30937, 2019 WL 4410069, at *3 (Bankr. N.D.N.Y. May 21, 2019) ("Under the Bankruptcy Code, the court has the inherent authority under 11 U.S.C. § 105(a) to suspend an attorney from practice."). Accordingly, the sanctions imposed were an appropriate exercise of the Bankruptcy Court's authority, and Appellant's arguments to the contrary fail.

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's February 19, 2025 and March 4, 2025 Orders are affirmed, as is its April 4, 2025 Order denying reconsideration of these Orders.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: March 17, 2026
     White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.